# Wochner, Appellant, v. Pennsylvania Engineering Works.

*Negligence—Master and servant—Defective tools—Assumption of risk—Fellow servant—Nonsuit.*

1. In an action against an engineering company to recover damages for injuries sustained by an employee while operating a chipping machine in defendant's plant, a nonsuit was properly entered where it appeared that the accident resulted from the breaking of the chisel of the machine, that for a long time prior to the accident plaintiff was aware of the fact that such tools, which were dressed in defendant's plant, were breaking more frequently than it was usual for such tools to break, that he had complained to the foreman that he could not get a tool that would not break, but continued with his work although he had received no assurance that the defects would be remedied.

2. The blacksmith who repaired the tools and the plaintiff were fellow servants.

Argued Oct. 5, 1915. Appeal, No. 178, Oct. T., 1915, by plaintiff, from final order of C. P. Lawrence Co., Sept. T., 1913, No. 21, refusing to take off compulsory nonsuit in case of Joseph Wochner v. Pennsylvania Engineering Works. Before BROWN, C. J., POTTER, STEWART, MOSCH-ZISKER and FRAZER, JJ. Affirmed.

Trespass to recover damages for personal injuries.

The facts appear in the following opinion by HOLT, P. J., specially presiding:

This suit was brought to recover damages for an injury which the plaintiff suffered to one of his eyes on December 27, 1911, while operating a chipping machine in the plant of the defendant. This machine was operated by compressed air; and consists of an appliance in the end of which is placed a chisel or gouge, which chisel or gouge is operated by a plunger. This machine or appliance when in use is held so that the point of the chisel or gouge is in contact with the metal which is being cut,

and a degree of force is applied by the operator slightly leaning forward, holding the gouge or chisel in one hand and the remaining part of the machine in the other. On the day in question the plaintiff, while cutting a pipe in the defendant's factory with said machine, received his injury by the breaking of the end of the gouge or chisel, which caused the plaintiff to be thrown slightly forward, when the part of the tool or appliance which remained in his hand was thrown upward, striking his glasses or goggles and breaking them, with the result that some of the broken glass was thrown into the plaintiff's eye, very seriously injuring it.

The ground of negligence alleged in the statement was the failure of the defendant to furnish the plaintiff with reasonably safe chisels or gouges with which to do his work; and it is alleged in the statement and the evidence tended to prove that the defect in the gouge which broke was due to the fact that it was tempered too hard. In connection with the defendant's plant is a blacksmithing department in which the gouge or chisel which was being used by the plaintiff at the time of the accident and other like tools had been dressed from time to time. For a considerable length of time before the happening of the accident, according to the plaintiff's testimony, gouges or chisels dressed in the said blacksmithing department and supplied to the plaintiff and other workmen doing the same kind of work, broke more frequently than such tools usually break when used in the same kind of work in which the plaintiff was engaged. The plaintiff testified that he observed this condition of the tools. The following question was propounded to the plaintiff:

Q. "State to the court and jury if at any time immediately before this accident that you had complained that these tools were breaking more frequently than was usual for tools doing the class of work which they were required to perform; and that this notice was given to some one in authority?"

To this question the plaintiff answered, yes, sir.

The plaintiff further testified that he made the complaint to the foreman of the blacksmithing department; and again, that he told the foreman of the blacksmithing department that the tools were breaking, and that he couldn't get one to stand. The plaintiff had much experience in the operation of machines of the kind which he was using on the day of the accident, using therein chisels and gouges of the same general kind used by him for a long time prior to and on the day of the accident. The evidence tended to prove that the tools known as chisels or gouges broke and had been breaking for a considerable length of time, possibly several weeks before the time of the accident, because the temper was too hard; and the evidence also tended to prove that a proper inspection of the tools before they were given into the possession of the workmen for use would have determined the fact that the temper was too hard. Failure to make a proper inspection of these gouges or tools is also alleged as negligence on the part of the defendant. The failure to inspect was evidence of negligence on the part of the defendant. Besides, it was the defendant's duty to know whether or not the tools furnished to its employee were reasonably safe, where such knowledge could have been obtained by proper inspection. The difficulty in the case lies in the fact that the plaintiff was cognizant of the fact for a long period of time that the tools were breaking more frequently than it was usual for such tools to break. He said that he told the foreman, that he, the plaintiff, could not get a tool that would not break.

The employee assumes all of the risks ordinarily incident to the business in which he is engaged, and all other risks that are patent to ordinary observation, or known to him, no matter how they arise; and where an employee knows that tools with which he is working are dangerous by reason of their frequent breaking, and appreciates the danger incident to their use when they are

in such defective condition, he thereby assumes all of the risks incident to their use, unless he has made complaint to his employer and is requested by the employer to continue to use the tools under a promise of repairs, or a promise to remedy the defects.

"An employee who continues in an employment, which, by reason of defective machinery or appliances he knows to be dangerous, assumes the risk of any accident that may result therefrom." Talbot v. Sims, 213 Pa. 1.

"Where a stone mason sees four stones fall on two successive days from defective "dogs" connected with a derrick, and he continues his work, and is injured on the third day by a fifth stone falling upon him, he cannot recover from his employer. In such a case it is immaterial that the workman after the second stone fell called the attention of the foreman to the fact, and that the foreman said no change would be made." Id.

"An employee who continues his employment, which by reason of defective machinery or appliances he knows to be dangerous assumes the risk of any accident that may result therefrom, with the qualification that if in pursuance of the promise of his employer to remedy the defect, and the risk be not such as to threaten immediate danger, the employee continue in the employment and be injured without fault on his part, the employer may be liable": Jones v. Burnham, 217 Pa. 286.

The plaintiff relies upon the case of Ready v. Smith & Furbush Machine Company, 51 Pa. Superior Ct. 294, and similar cases. In the case just referred to Ready received from a repair boss in charge of a department of the employer's works a defective tool in lieu of a part of a machine that had been lost or mislaid, and was injured in using such defective tool. It was held that the employer was liable for his injuries; and it was further held that the employer was not relieved from such liability by the fact that a room was established in the works where properly repaired tools could be obtained, if there is no evidence that the employee knew of such a

room, and where it is affirmatively shown that such room was accessible to employees only on orders from the foremen or repair boss. In the case just cited there was no evidence tending to prove that Ready knew that the tool furnished to him was defective. In the case at bar, according to the plaintiff's own testimony he knew that the gouges or chisels furnished to him from the blacksmithing department where they were dressed were breaking more frequently than it was usual for such tools to break, and that he, the plaintiff, had informed the foreman of the blacksmithing department that he couldn't get a tool that wouldn't break. The tool which the plaintiff was using at the time of the accident was one that had been used a long time by the plaintiff, and was spoken of by him as a good tool; and it had been dressed in the blacksmithing department several times prior to the accident, and was dressed for the last time the day before the happening of the accident. The blacksmith who dressed the tools and the plaintiff were fellow servants.

"A blacksmith and a car laborer engaged in the same erection are fellow servants; where the blacksmith's employment was to make car links and the laborer was injured by the breaking of a carelessly made link the employer's duty is fulfilled by furnishing suitable material and a competent blacksmith": Buck v. New Jersey Zinc Company, 204 Pa. 133.

There is no allegation that the blacksmith was incompetent. The blacksmith and the plaintiff were engaged in the same enterprise. The tools were of the proper kind when furnished by the employer. The plaintiff used them, and when they needed repairs, the blacksmith repaired them.

The court entered a compulsory nonsuit which it subsequently refused to take off. Plaintiff appealed.

*Error assigned* was in refusing to take off compulsory nonsuit.

*C. W. Fenton,* with him *W. N. Anderson* and *F. R. Haun,* for appellant.

*J. Norman Martin,* with him *Norman A. Martin,* of *Martin & Martin,* for appellee.

PER CURIAM, October 28, 1915:

That the judgment of nonsuit in this case was properly entered conclusively appears in the opinion of the learned court below, refusing to take it off.

Judgment affirmed.